IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR93 SNLJ/SPM |
| | ) | |
| TODD SCOTT | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH SEARCH AND SEIZURE AT HIS RESIDENCE ON NOVEMEBER 11, 2013**

Comes now Defendant TODD SCOTT, through his attorney, Sean M. Vicente, Assistant Federal Public Defender, and respectfully requests the Court to enter an order suppressing any and all evidence seized as a result of the search of his apartment on November 11, 2013. The search warrant lacked probable cause and the *Leon* good faith exception does not save the warrant. Therefore, any evidence obtained as a result of the search must be suppressed. In support of this motion, Mr. Scott states:

1. On November 8, 2013, St. Louis Metropolitan Police officer Erich vonNida filed a Search Warrant Application, and an affidavit in support thereof, in the Circuit Court of Saint Louis City requesting permission to search Mr. Scott's apartment at 3012 Texas in the City of Saint Louis. Specifically, the downstairs apartment at 3012 Texas, St. Louis, MO. See Attachment #1 – Officer vonNida's application and affidavit, and the Circuit Court Judge Clark's signed warrant.

2. Officer vonNida's affidavit alleged that there would be evidence of the manufacture and sale of controlled substances and firearms at Mr. Scott's apartment. (vonNida affidavit ¶ 7, November 8, 2013).

3. Officer vonNida based his belief entirely on an uncorroborated statement by an informant. (Id. ¶¶2-5). The alleged probable cause to search Mr. Scott's apartment was therefore derived entirely from an uncorroborated informant's tip. The affidavit does not note any attempts by the police to verify the informant's information regarding drug sales, etc. and the affidavit does not mention whether the informant had proven reliable in the past.

4. Despite this, the warrant was granted on November 8, 2013 and executed on November 11, 2013. Items seized during the search included (but were not limited to): two firearms, ammunition, papers addressed to Mr. Scott, methamphetamine, heroin, other drugs, drug paraphernalia, a safe, and United States currency. A second search warrant was applied for and granted (See Attachment #2) to obtain access to the safe. Evidenced seized in the initial search was used in the second application; therefore, Mr. Scott also moves to suppress the evidence removed from the safe including but not limited to $5,000, narcotics, and other incriminating evidence. The items recovered from the safe should also be suppressed under the Fruit of the poisonous tree doctrine because the facts supporting the second affidavit stemmed directly from the first search warrant which wholly lacked probable cause. All the aforementioned items in the above paragraph form the basis for the charges alleged in Counts I, II, and III in the indictment.

### The Affidavit Failed to Establish Probable Cause

5. The Fourth Amendment requires a showing of probable cause before a search warrant may be issued. U.S. Constitution Amendment IV. There must be a fair probability that contraband or evidence of a crime will be found in a particular place in order for the magistrate to issue the search warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When a search warrant is not supported by probable cause, the evidence obtained during the subsequent search is generally

inadmissible. *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002). When determining whether probable cause exists for a search warrant, only the information found within the four corners of the affidavit may be considered. *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

6. The uncorroborated information provided by an anonymous informant does not support a finding of probable cause to issue a warrant. Probable cause must exist at the time the search warrant is issued. *United States v. Gettel*, 474 F.3d 1081 (8th Cir. 2007). Aside from the confidential informant's conclusory statements, there was no corroborating information that indicated criminal activity within the affidavit. *See United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007)(conclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining probable cause).

7. In this case, the affidavit that forms the basis for the search warrant is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable because none of the allegations that Mr. Scott was engaged in illegal activity were corroborated in any way. "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." Id. When the affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). The confidential informant also gave Officer vonNida information about Mr.

Scott's alleged drug possession and distribution and illegal firearm possession. (Id. ¶¶ 3-5). But, there is no evidence that Officer vonNida ever tried to corroborate any of that information before the search. Furthermore, there is no evidence that the confidential informant had ever given information that led to the seizure of contraband or to criminal convictions in the past. Without such a track record the confidential informant cannot be considered reliable.

8. An anonymous tip can also be considered reliable if it accurately predicts the subject's future actions. *See* Alabama v. White, 496 U.S. 325, 331-32 (1990). However, the affidavit in this case does not claim that the confidential informant made any predictions about Mr. Scott's future actions, and so it cannot be held reliable on those grounds.

9. Anonymous tips may also be considered reliable when they have "the richness and detail of a first hand observation." United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990). In Jackson, "[t]he [anonymous] caller identified the source of his tip; he gave the height of the marijuana plants, their location and the location of sacks of marijuana, and the name of the occupant." Id. That information, when combined with verification that the claimed occupant lived at the claimed address and observation of the home itself, was held to be enough indicia of reliability to issue a valid search warrant. Id.

10. The confidential tip in this case is significantly less detailed. According to the affidavit, the tip merely claims the presence of various drugs and guns inside the house and that drugs were being sold. (vonNida affidavit ¶¶ 3-5). The affidavit does not claim that the tip gave any detail about the amounts or locations of the drugs in the home. Therefore, the confidential tip in this case does not rise to the level as in Jackson.

11. The confidential informant gave Officer vonNida Mr. Scott's name, race, gender, approximate age, approximate height, approximate weight, and address. (vonNida affidavit, ¶ 2). Officer

vonNida did a computer check that revealed a person named Todd Scott existed and he appeared to be the right race, gender, and age. (Id. ¶ 6). There is no evidence that Officer vonNida ever tried to corroborate that the "Todd Scott" he found during his computer search was the same "Todd Scott" that the confidential informant fingered.

12. However, merely getting identifying characteristics right is not enough to prove a tip reliable: "[a]n anonymous tip must 'be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.'" United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000) (quoting Florida v. J.L., 529 U.S. 266, 272 (2000)).

13. It makes no difference that evidence was eventually seized from Mr. Scott pursuant to the warrant. "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." J.L., 529 U.S. at 271. J.L. dealt with the reasonable suspicion required to make an investigatory stop. That standard is less stringent than the probable cause required for a warrant. In that case, the police officers did not have reasonable suspicion to stop J.L. based on an anonymous tip that was uncorroborated except for identifying information. If that is not enough to grant reasonable suspicion, then it clearly cannot be enough to grant probable cause in this case.

### The *Leon* Exception Does Not Save the Search Warrant

14. In United States v. Leon, the Supreme Court established an exception to the Fourth Amendment exclusionary rule "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 920 (1984). The good faith exception does not apply to the facts in this case. Where a search is conducted pursuant to a warrant, this exception does not create a blanket exception against suppression. *United States v.*

*Weeks*, 160 F.3d 1210, 1212 (8th Cir. 1998). This exception applies unless the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *United States v. Leon*, 468 U.S. 897, 923 (1984). Such is the case here and therefore the good faith exception should not be applied and all evidence and statements should be suppressed.

15. When assessing the good faith of the officers, the officer's reliance on the warrant must be objectively reasonable. *Id.* at 919. Inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the judge's authorization. *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006). In this case the officer who executed the search warrant was the same officer who wrote the affidavit in support of that warrant. Officer vonNida is not a rookie officer. He has been on the St. Louis Metropolitan Police Department since July 2008. It can be assumed that an officer with this much experience would know that probable cause is required for a search warrant. Based on the summary information received from the confidential informant, Officer vonNida should have corroborated it with any one or combination of a number of common, basic investigatory techniques, such as a controlled buy, surveillance of the residence, a knock and talk, a trash pull, or a second independent and reliable informant. In fact, most police academies teach the basic legal concepts involved in search warrant affidavits, including the elements required. The elements in this affidavit are so lacking in probable cause that an academy recruit would know basing a search on an uncorroborated criminal activity by an unproven informant is illegal. The Court should expect much more from a seasoned veteran like Officer vonNida. Therefore, it was objectively unreasonable for him to do the search.

16. Not applying the good faith exception in this case will also deter violations of people's Fourth Amendment rights and encourage good police work. Suppressing the evidence that resulted from this search warrant will deter police from verifying confidential tips through illegal searches it will encourage less intrusive and constitutionally sounder methods. The deterrence value of suppressing this evidence is therefore greater than the cost of suppression. *See* Leon, 468 U.S. at 919-21.

WHEREFORE, for the foregoing reasons, Defendant Todd Scott requests this Court enter its order suppressing any and all evidence obtained by the Government as a result of the unlawful search and seizure of his residence.

Respectfully submitted,

/s/Sean M. Vicente
SEAN M. VICENTE
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Sean_Vicente@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Thomas Albus, Assistant United States Attorney.

/s/Sean M. Vicente
SEAN M. VICENTE
Assistant Federal Public Defender